UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COBB LAVERNE MUTTER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-cv-02381-KJN<br><br><br><br>ORDER |

Plaintiff Cobb Laverne Mutter seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF No. 13.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 16.) Thereafter, plaintiff filed a reply brief. (ECF No. 17.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.      BACKGROUND

Plaintiff was born on September 27, 1955.[2] (Administrative Transcript ("AT") 178.) He has received a GED, and is a veteran of the United States Army who served from October 29, 1974, through May 6, 1987. (AT 55, 470.) In 2004, plaintiff quit his job as "upper management" for a sporting goods store, allegedly due to anxiety and panic attacks. (See AT 26, 55, 66–67.) From approximately 2008 through 2014, plaintiff lived primarily in South Korea, where he did missionary work and was, for some period of time, a pastor of a church. (See AT 26, 57–58, 371, 3779, 394, 446.) Plaintiff did not seek or receive any regular medical or mental health treatment when he lived in South Korea. (AT 58.)

On September 4, 2013, plaintiff applied for DIB, alleging that his disability began on April 27, 2004. (AT 19, 178.) Plaintiff claimed that he was disabled due to depression; mood disorder; pain in his legs, knees, and back from military accidents; and heart problems. (AT 203.) After plaintiff's application was denied initially and on reconsideration, ALJ Peter F. Belli conducted a hearing on November 5, 2014. (AT 40–49.) After learning that plaintiff's last psychological evaluation was in 2007, ALJ Belli stopped the hearing so that plaintiff could have a current psychological evaluation. (AT 47–48.) Plaintiff then underwent two examinations—one by Troy Ewing, Psy.D. on December 9, 2014, and another by Robert L. Morgan, Ph.D. on December 16, 2014. (See AT 476–89, 517–29.) ALJ Belli conducted a second hearing on July 6, 2015. (AT 50–77.) At the hearing, plaintiff was represented, and the ALJ took testimony from both the plaintiff and David Detmer, a vocational expert ("VE"). (Id.)

The ALJ subsequently issued a decision dated April 4, 2016, determining that plaintiff had not been under a disability as defined in the Act, at any time from April 27, 2004, the alleged onset date, through the date last insured. (AT 19–32.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

August 2, 2016. (AT 1–3.) Plaintiff subsequently filed this action on October 5, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.     ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed the medical opinion evidence; (2) whether the ALJ improperly discounted plaintiff's credibility; and (3) whether the ALJ's residual functional capacity ("RFC") determination was without substantial evidence support.[3]

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

---

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

3

1  IV.     DISCUSSION

2         A.     Summary of the ALJ's Findings

3         The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard

4  five-step analytical framework.[4]  Preliminarily, the ALJ determined that plaintiff last met the

5  insured status requirements of the Act on December 31, 2009.  (AT 21.)  At step one, the ALJ

6  concluded that plaintiff had not engaged in substantial gainful activity during the period from the

7  alleged onset date of April 27, 2004, through December 31, 2009.  (Id.)  At step two, the ALJ

8  found that plaintiff had the following severe impairments:  depression, mood disorder, and

9  degenerative disc disease of the lumbar spine.  (Id.)  However, at step three the ALJ concluded

10 that plaintiff did not have an impairment or combination of impairments that met or medically

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AT 23.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, and determined that plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) except that plaintiff:

> could occasionally lift or carry twenty pounds and could frequently lift or carry ten pounds; the claimant could sit for eight hours in an eight hour workday; the claimant could stand/walk for six out o[f] eight hours in a workday; could not climb ladders ropes scaffolds; the claimant could frequently stoop, crouch, crawl, and kneel; the claimant could receive, understand, remember, and carry out simple job instructions; the claimant could frequently receive, understand, remember, and carry out detailed job instructions; the claimant could frequently receive, understand, remember, and carry out complex instructions; the claimant could occasionally interact with [the] general public; the claimant could frequently interact with coworkers and supervisors; the claimant was able to adjust [to] simple workplace changes; the claimant could make workplace judgements.

(AT 25.) At step four, in light of plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded that, through the date last insured, plaintiff was capable of performing past relevant work as a retail manager (DOT 185.167-046, light, SVP 7) and as a fast food manager (DOT 185.137-010, light, SVP 5) because these jobs would not require plaintiff to perform any work-related activities precluded by his RFC. (AT 31–32.) Therefore, the ALJ did not proceed to step five and concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from April 27, 2004, the alleged onset date, through December 31, 2009, the date last insured." (AT 32.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

While plaintiff raises several challenges to the ALJ's decision, he conspicuously ignores that, through the first four steps of the sequential evaluation process, he bears the burden of proving that he was disabled during the relevant period. Bowen, 482 U.S. at 146 n.5. At the same time, plaintiff admits that he did not receive any regular mental health treatment while he lived in South Korea—a time that included approximately the last two years that plaintiff met the insured status requirements of the Act. (See AT 19, 22, 26, 28, 58.) As the ALJ noted, plaintiff's failure to seek regular treatment caused his medical records to be "extremely limited" during this

5

timeframe. (AT 26.) Yet, plaintiff has not explained why he did not receive regular treatment, for approximately six years, for the conditions he alleges entitle him to DIB, even though he performed missionary work and acted as a pastor of a church during this same time. (See AT 26, 371, 379, 394, 446.) The ALJ questioned plaintiff directly regarding his failure to seek treatment, affording plaintiff an opportunity to justify his inaction.

> Q So from 2008 until 2014 you were not under the care of a mental health provider?
> A No, sir, I wasn't in this country.
> Q Were you receiving it outside of this country?
> A No, sir, I wasn't.
> Q Why not?
> A I was in Korea, sir.
> Q Why couldn't you as a veteran attend the military bases there for treatment?
> A I just never did, sir. I just took my medication when I came back. I came back to the states once a year sir, and I would see my doctor . . .

(AT 57–58.)

Thus, plaintiff's own unexplained inaction created gaps in his medical record, leaving his disability status ambiguous during the two years leading up to the date last insured. As explained above, the ALJ is responsible for determining plaintiff's credibility and resolving ambiguities in the record. Edlund, 253 F.3d at 1156. Because the record is ambiguous as to plaintiff's longitudinal progress from 2008 through December 31, 2009, the date last insured, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti, 533 F.3d at 1038.

With this context in mind, the court turns to plaintiff's substantive challenges to the Commissioner's determinations.

1. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an

6

examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### i. Opinions of Troy Ewing, Psy.D. and Robert L. Morgan, Ph.D.

During the November 5, 2014 hearing, the ALJ directed plaintiff to have a current psychological evaluation so that the ALJ could determine if any medical improvement had been made. (AT 47–48.) In December 2014, plaintiff was examined and evaluated by both Drs. Ewing and Morgan. (AT 476–89, 517–29.) When determining plaintiff's RFC, the ALJ gave great weight to the opinion of Dr. Ewing, and little weight to the opinion of Dr. Morgan. (See AT 28–29.) Plaintiff asserts that the ALJ improperly weighed these opinions. (ECF No. 13 at 25–

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

7

26.) Because these opinions contradicted one another, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Morgan's opinion. See Lester, 81 F.3d at 830–31.

Dr. Ewing opined that plaintiff was only minimally to moderately limited in his abilities to perform various work-related activities, due to his anxiety and depression. (See AT 483–84.) The ALJ summarized Dr. Ewing's opinion and gave it great weight, explaining that

> The claimant was assessed as having mild memory deficits [AT 483]. The mild memory difficulties for retention and immediate auditory memory abilities appeared likely contributed to depressive symptoms rather than an amnestic disorder. . . . The claimant presented as cooperative but depressed [id.] The depression was thought to likely contribute to missed days of work and social avoidance throughout a forty-hour workweek until his depression can be address[ed] with counseling and continued medication. The test results indicated that the claimant had average to high average intellectual functioning. . . . The evidence within the record concerning the claimant's mental health treatment was limited, but based on the available evidence and the claimant's allegations, the opinion of Dr. Ewing demonstrated that, overall, the claimant's allegations of mental impairment were overstated. For this reason, the opinion was given great weight.

(AT 28–29.)

Dr. Morgan opined that plaintiff had marked limitations in his abilities to complete various work-related tasks.[6] (See AT 523–25.) The ALJ summarized Dr. Morgan's opinion and gave it little weight, explaining that

> the inconsistencies between [Dr. Morgan's] report and the report of Dr. Ewing made it seem like [Dr. Morgan] had provided more weight to the claimant's subjective complaints. The mental status examination results from the VA repeatedly indicated that the claimant's memory and concentration were either intact or there were no overt signs of problems observed. Dr. Morgan noted the claimant had marked limits to his activities of daily living. However, the claimant . . . drove himself to the hearing . . . [and] was independent for basic activities of daily living, did not need help preparing meals or doing light household chores [AT 478]. . . . [and he] was reportedly active during the day. . . . Additionally, Dr. Morgan seemed to provide too little weight to the claimant's social functioning. . . . Dr. Morgan was not a treating source and he relied heavily on the claimant's subjective allegations, such as the fact that he was "home all day long." Once again, this was undermined

---

[6] Dr. Morgan also determined that plaintiff met the criteria for disability under listings 12.04 and 12.06. (AT 523.) However, plaintiff does not challenge the ALJ's step three determination that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of either listing.

8

> by the fact that the claimant performed missionary work in Korea and was even a pastor of a church prior to the date last insured. . . . For these reasons, the opinion was given little weight.

(AT 30.)

The ALJ's reasoning is supported by substantial evidence in the record. For example, the available objective findings undermine Dr. Morgan's findings of marked psychological impairments. As the ALJ noted, "VA treatment records showed that either the claimant's concentration or memory were intact or there were no overt signs of concentration or memory problems observed on interview." (AT 24, 279–80, 283–84, 289–90, 310, 711, 714, 718–19, 722, 725, 728–29, 732.) While these cited records date from 2004 through 2005, and then again from 2014 through 2015, the ALJ appropriately relied on them, especially since this significant gap was caused by plaintiff's unexplained failure to seek consistent treatment.

The ALJ also appropriately determined that Dr. Morgan's opinion was inconsistent with plaintiff's social functioning—such as acting as a pastor (see AT 446)—and his statements to Dr. Ewing, demonstrating that he was independent for basic activities of daily living. (See AT 478.)

Similarly, it was reasonable for the ALJ to determine that Dr. Ewing's opinion was more consistent with the available medical evidence, while Dr. Morgan's opinion relied more upon plaintiff's questionable subjective complaints, especially in light of plaintiff's activities in South Korea and his failure to seek regular treatment, all of which casts doubt on the degree of plaintiff's actual limitations.

Therefore, the ALJ gave specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Morgan's opinion, and instead giving great weight to Dr. Ewing's opinion.

However, plaintiff argues that the ALJ nonetheless erred in relying on Dr. Ewing's 2014 opinion to determine whether or not plaintiff was disabled on December 31, 2009, the date last insured. (ECF No. 13 at 25.) This argument overlooks the burden of proof and it is not persuasive. The ALJ's decision is based upon the available record, and it was plaintiff's failure to seek consistent treatment that caused the extremely sparse record between 2008 and 2014. The Commissioner is not compelled to find a claimant disabled when the claimant has failed to carry

his burden of proof through the first four steps. See Bowen, 482 U.S. at 146 n.5 (explaining that the claimant bears the burden of proof in the first four steps of the sequential evaluation process).

### ii. VA disability rating decision

Prior to December of 2014, plaintiff's last psychological evaluation was performed after he filed a claim with the VA on November 2, 2007. (AT 470–72.) On January 17, 2008, the VA issued a rating decision and concluded that plaintiff's "mood disorder (previously evaluated as depression)" continued to be 100% disabling. (AT 470.) When explaining the reasons for the decision, the VA discussed and analyzed plaintiff's mood disorder. (See AT 470–72.) The decision also included a stand-alone assertion that various physical impairments were determined to be "independently ratable at 60% or more from 5/12/2004." (AT 474.)

Plaintiff argues that the ALJ erred by failing to provide legally adequate reasons for rejecting the VA's determination regarding plaintiff's mood disorder, and by failing to provide any reason for rejecting the determination regarding his physical impairments. (ECF No. 13 at 21–24.)

The Ninth Circuit has held that

> Because social security disability and VA disability programs "serve the same governmental purpose—providing benefits to those unable to work because of a serious disability," the ALJ must give "great weight to a VA determination of disability." [. . .] An ALJ, however, "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record."

Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010) (citing McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir.2002)).

#### a. 100% rating of mood disorder

The ALJ discussed the VA's disability rating and gave it little weight, explaining that

> The 100% evaluation of mood disorder was continued in part because the claimant's improvement with continued treatment would be minimal at best. The claimant received a GAF score of 45.[7] These assertions were not supported by adequate objective

---

[7] A GAF score reflects a clinician's rating, on a continuum of mental health-illness (0-100), of a patient's overall functioning. Diagnostic and Statistical Manual of Mental Disorders, (4th Edition 1994) (DSM-IV), American Psychiatric Ass'n, pages 30–32.

10

> examination notes and were conclusory in nature. While the determination of disability from the VA is a factor in addressing the frequency and severity of the claimant'[s] reported symptoms, the VA findings were non-binding. Furthermore the GAF score, as well as the determination that the claimant's mood disorder was disabling, which included reported episodes of panic attacks and mood outbreaks, was undermined by the claimant's reported activities with regard to his missionary work and travels to and from South Korea, California, and Arizona. For these reasons, the opinion was given little weight.

(AT 30.)

As the ALJ asserts, this rating is without substantial support from the objective medical evidence in the record. First, plaintiff admits that "the examiner's report [that served as the basis for this evaluation] is not in the record" (ECF No. 13 at 23), even though the ALJ afforded plaintiff thirty days, after the July 6, 2015 hearing, to supplement the record with any missing medical records from the VA. (See AT 76.) At the same time, as the ALJ explained, "[t]he mental status examination results from the VA repeatedly indicated that the claimant's memory and concentration were either intact or there were no overt signs of problems" (AT 30, 279–80, 283–84, 289–90, 310, 711, 714, 718–19, 722, 725, 728–29, 732), and the "evidence within the record concerning the claimant's mental health treatment was limited" due to plaintiff's failure to seek consistent treatment. (AT 29.)

Moreover, while plaintiff cites to portions of the record, prior to the date last insured, that might support the VA's disability rating (see ECF No. 13 at 22), the record is not as clear as plaintiff asserts. For example, on September 29, 2008, plaintiff presented to Dr. Geoffrey Hutchinson and reported that he "has been in Korea for some time w[ith] his spouse, says his depression is managed, he is compliant w[ith] citalopram." (AT 592.) During that visit, Dr. Hutchinson determined that plaintiff's panic disorder was in remission and assessed plaintiff with a GAF score of 65. (Id.) This record entry—one of plaintiff's few psychological progress notes after the VA's disability decision, and before the date last insured—persuasively supports the ALJ's conclusion that the objective medical evidence did not support the VA's 100% rating. At a minimum, this record belies any assertion that the record conclusively supports the VA's 100% rating—and when the record is ambiguous, the court will defer to the ALJ's reasonable

11

interpretation of the evidence.  See Edlund, 253 F.3d at 1156; Tommasetti, 533 F.3d at 1038.

Furthermore, the ALJ explained that the VA's reliance on plaintiff's one-time GAF score of 45 was misplaced because

> . . . a GAF assessment is a one-time "snapshot" of mental functioning that is not intended for forensic purposes, [and as such,] the undersigned did not assign significant weight to any such ratings wherever they appear in the record. [. . .]
>
> The claimant's GAF score in combination with the claimant's results from the consultative examination [with Dr. Ewing] indicated that the claimant's mental issues were not as severe as alleged.  His scores ranged from 45–60.

(AT 31.)  This explanation is also supported by the record.  Plaintiff presented on at least thirteen occasions with a GAF score of 50 or more, during his documented treatment, which undermines the VA's reliance on a single GAF score of 45 as a reason to find plaintiff 100% disabled.  (See AT 280, 284, 289, 482, 523, 592, 597, 613, 650, 664, 666, 667, 672.)

Finally, the ALJ appropriately determined that the VA's 100% evaluation was undermined by plaintiff's missionary work and travels out of the country, which the ALJ thoroughly documented.  Living in a foreign country, performing missionary work, and acting as a pastor—all while not receiving regular mental health treatment—are persuasive and valid reasons to discount a finding that such a person is 100% disabled due to his mental health conditions.

Therefore, the ALJ gave "persuasive, specific, [and] valid reasons," supported by substantial evidence in the record, for dismissing the VA's determination that plaintiff's mood disorder was 100% disabling.  See Turner, 613 F.3d at 1225.

                b.     <u>60% rating of physical impairments</u>

As to the VA's statement that plaintiff was independently 60% disabled due to his physical impairments, the ALJ was not required to discuss this unsupported conclusion.  When "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'"  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).  "[T]he ALJ is not required to discuss evidence that is neither significant nor probative."  Id.

Here, this purported opinion is an unsupported conclusion that was clearly not central to the VA's decision, which focused its minimal discussion and analysis on plaintiff's mood disorder. (See AT 470–75.) There was no analysis whatsoever of plaintiff's alleged physical impairments, but rather a conclusory statement, buried in the middle of the report, indicating that plaintiff was independently disabled due to his physical impairments. (AT 474 ("additional service-connected disabilities of chondromalacia, arthritis, right knee, post operative, low back pain with chronic strain and discomfort, sciatic pain, left leg, sciatic pain, right leg, tinnitus, independently ratable at 60 percent or more from 5/12/2004").)

Even if it were technically error for the ALJ to not discuss this purported opinion, any such error was harmless, as such a conclusory statement does not warrant any weight. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"); Meanel, 172 F.3d at 1114 (the ALJ "need not give [an opinion] any weight if it is conclusory and supported by minimal clinical findings).

### iii. Opinion of Geoffrey T. Hutchinson, Ph.D.

On September 18, 2007, Dr. Hutchinson entered a "psychological summary of vet's progress" into plaintiff's medical file. (AT 601.) In relevant part, Dr. Hutchinson indicated that

> More likely than not, with continued treatment, vet[']s improvement in depression symptoms would be minimal at best. It is my clinical opinion that there is total social and total occupational impairment due to depression.

(AT 601.)

According to plaintiff, the ALJ erred by failing to acknowledge or give any reasons for rejecting this opinion from plaintiff's treating psychologist. (ECF No. 13 at 20–21.)

First, while the ALJ may not have explicitly referenced this treatment note, it is not accurate to conclude that the ALJ did not discuss or reject it. Importantly, the VA's evaluation, discussed above, incorporated Dr. Hutchinson's opinion, noting that

> the VA treatment records . . . document an assessment of total occupational and social impairment due to depression . . . in September 2007. The examiner stated that more likely than not, with continued treatment, your improvement in depression symptoms would be minimal at best.

13

(AT 471.)  Therefore, when the ALJ rejected the VA's evaluation, he also rejected Dr. Hutchinson's opinion because this opinion was explicitly adopted as part of the VA's evaluation.

Second, as explained, the ALJ is not required to discuss every piece of evidence.  Howard ex rel. Wolff, 341 F.3d at 1012.  Dr. Hutchinson's September 2007 opinion is conclusory and does not include any objective medical findings.  (See AT 601.)  Therefore, it was neither significant nor probative, and the ALJ was not required to discuss it.

Third, even if the ALJ technically erred by not explicitly discussing this opinion independently from his discussion of the VA evaluation, any such error was harmless, as this conclusory and unsupported opinion does not warrant any weight.  See Molina, 674 F.3d at 1111; Meanel, 172 F.3d at 1114.

2. *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

14

1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the ALJ did not entirely discredit plaintiff's allegations of limitations due to his depression and mood disorder. Indeed, the ALJ limited plaintiff to only frequently receiving, understanding, remembering, and carrying out detailed and complex instructions, as well as only occasional interaction with the general public. (AT 25.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i. Inconsistencies in the record

The ALJ found that claimant was not entirely credible, in part, due to inconsistencies between his assertions and his conduct, as well as inconsistencies between his statements and the record. Specifically, the ALJ reasoned that

> Though the claimant alleged that he left work due to his anxiety, he quit his job after speaking with the district manager. It was not clear whether the claimant could have moved to a less stressful work position. However, once he left work, he made no attempts to find employment in a position that was less stressful or that required him to supervise fewer people. Additionally, the claimant reported at the hearing that he was dealing with anxiety to the point where he was having many attacks in December of 2009. Yet, the record did not indicate that the claimant sought treatment for these issues at the time. The claimant corrected himself and said that his many panic attacks came about in 2007. He articulated that the VA in Arizona prescribed his medication in 2009, but again this record did not seem to be in the record. Most of the records were from after 2009. The claimant did have a record of treatment for panic attacks from the VA in 2005 [AT 584–85]. As time progressed, however, the medical record had less information regarding the claimant's treatment leading up to a gap between 2008-2014 where the claimant's medical record was extremely limited.

15

(AT 26.)

This reasoning is supported by plaintiff's testimony and the record. (See AT 60–61, 66–67, 584–585.) Thus, it was appropriate for the ALJ to point out these inconsistencies when discounting plaintiff's credibility. See Thomas, 278 F.3d at 958–59.

### ii. Failure to consistently seek treatment

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

As explained, it is uncontroverted that plaintiff failed to seek consistent treatment for his mental health issues while he lived in South Korea from 2008 until 2014. Therefore, the ALJ appropriately reasoned that

> The claimant's efforts to address his mental issues were not entirely persuasive. . . . Of great concern was the fact that the claimant testified that he received no formal mental health treatment while he was traveling to and from Korea. He had his medications sent to him. If the claimant's issues were as severe as alleged, active methods to address his mental issues would have been appropriate.

(AT 26–27.)

### iii. Conservative treatment

Relatedly, only taking medication and seeing a doctor once a year constitutes relatively conservative treatment, and was a proper consideration for the ALJ when discounting plaintiff's credibility. See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

####            iv.        Condition can be controlled with medication

Finally, a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

Here, the ALJ appropriately pointed out that plaintiff's condition was apparently controlled by his medication while he lived in South Korea. As the ALJ reasoned, "[t]aking several years off of his mental health treatment and only using medication would not be an effective way to manage or address his issues" if they were as severe as alleged. (AT 27.)

### 3.    *Whether the ALJ's RFC determination was without substantial evidence support*

Plaintiff argues that "it is not entirely clear upon what evidence the ALJ based his mental RFC finding" because according to plaintiff, the RFC is not based upon plaintiff's psychotherapy records from 2005 to 2007 or Dr. Hutchinson's opinion, and the RFC does not incorporate all of the limitations opined by Dr. Ewing. (ECF No. 13 at 27.) (Id.) Plaintiff's argument is not well taken.

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Thus, the ALJ was not required to adopt an RFC that exactly matched any single opinion or piece of evidence in the record. Instead, the ALJ appropriately synthesized the available

evidence to craft the RFC determination, as was his responsibility. For all of the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. Therefore, the RFC determination is supported by substantial evidence in the record.

Moreover, to the extent that reaching an RFC determination may have been complicated by sparse medical records during the relevant period, it was plaintiff who created significant gaps in the record—without explanation—when he took six years off of consistent treatment for his allegedly disabling depression and mood disorder. (See AT 57–58.) Even so, the ALJ took appropriate measures to ensure that he had the best possible record, before making the RFC determination. First, he stopped the initial hearing to ensure that plaintiff had a current psychological evaluation. (AT 47–48.) Then, during the second hearing, the ALJ gave plaintiff an opportunity to explain why he did not seek consistent treatment for six years, to which plaintiff replied, "I just never did." (AT 58.) Finally, the ALJ provided plaintiff thirty days from the date of the second hearing to supplement the administrative record with any missing medical records. (AT 76.)

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: March 12, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE